**UNITED STATES of America**

v.

**Cordelia DIXON.**

**Crim. A. No. 88–318.**

United States District Court,
E.D. Pennsylvania.

Jan. 18, 1989.

Joan Markman, Asst. U.S. Atty., E.D.Pa., Philadelphia, Pa., for U.S.

David McColgin, Federal Court Div., Defender Ass'n of Philadelphia, Philadelphia, Pa., for Dixon.

## OPINION *

LOUIS H. POLLAK, District Judge.

In *United States v. Frank,* 864 F.2d 992 (3d Cir.1988), the Third Circuit addressed and resolved a large number of constitutional challenges to the guidelines and the structure of which it is a product, namely, the Sentencing Commission established by Congress. The decision of the Court of Appeals is, of course, binding on me and I follow it. I think it is permissible for me to add that I follow *Frank* not merely out of duty, but out of conviction that the Court of Appeals is correct and that its decision will be vindicated by the Supreme Court, when the Supreme Court decides the cases now pending before it, challenging the guidelines. *See United States v. Mistretta,* Nos. 87–1904, 87–7028, *cert. granted,* — U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920, *argued* October 5, 1988.

With respect to the issues canvassed this morning that the Court of Appeals did not address in *Frank,* my views are these: I do not see any due process or separation of powers deficiencies in the guidelines.

### I. *Due Process*

The defendant acknowledges that Congress, in its wisdom, has authority to eliminate all discretion from the sentencing process, and to legislate a code of mandatory sentences for every violation of the federal criminal laws. Happily, Congress has never thought to do that. The defendant also acknowledges that Congress could have itself legislated the very guidelines that the defendant challenges.

The constitutional deficiencies are said to arise from the fact that Congress turned the job of developing the guidelines over to others. Normally, I would understand that to be a delegation challenge and an assertion that Congress had engaged in undue delegation in turning its function of legislation over to a subordinate body not competent to perform that function. We know that Congress has historically delegated hundreds of rule-promulgating functions to

other entities. Congress does that to this day. It has delegated that authority to executive officials. It has delegated that authority to so-called independent agencies whose place in the conceptual tripartite structure has always been a little ambiguous. It has delegated that authority to the courts.

The instances in which that delegation process has been successfully challenged, I think, may be only two in number. The ones that come to my mind are the delegations under the New Deal, dealt with in *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), and *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). In those instances, the Supreme Court found that Congress had undertaken to delegate the authority to make rules but had not provided adequate guidance to its subordinates. In *Schechter,* Justice Cardozo termed what Congress had done "delegation running riot." 295 U.S. at 553, 55 S.Ct. at 853 (Cardozo, J., concurring).

There is no such delegation problem in the sense of untutored turning over of responsibility to a subordinate body in this instance. The Court of Appeals has made it very clear, in *Frank,* that the delegation to the Sentencing Commission of Congress' authority was done with care and under appropriately detailed precepts, instructing the Sentencing Commission as to the general territory it was to occupy, and, in broad terms, how to proceed.

■ The defendant has argued that delegation to the Sentencing Commission of the authority to promulgate these guidelines offends due process because where there is discretion within the sentencing function, that discretion must be exercised by judges as an inherently judicial function. That is an argument that I find fatally flawed by the defendant's concession that the very same discretion reflected in the guidelines could be exercised by Congress directly, if Congress itself were to have promulgated these guidelines or, in the al-

---

* Portion of a bench opinion following oral argument on December 1, 1988. Minor editorial changes have been made to enhance intelligibility.

ternative, were to have adopted these guidelines as recommended to it by an advisory body. To say that there is a due process difference between having Congress do the direct legislating or adopting on the one hand, and Congress handing the job over to a trusted subordinate group of delegates on the other, seems to me to be wholly unpersuasive.

The defendant contends that the first option or set of options—Congress legislating or adopting the guidelines—has the virtue of accountability, which the second—the articulation of guidelines by the Sentencing Commission—does not. But accountability is not a due process ingredient. Accountability is another way of talking about delegation. When delegation is said to be "running riot," to use Cardozo's term in *Schechter*, the constitutional deficiency is that rules and substantive norms are being established by a body that is not accountable, by a group of people to whom Congress turned over some authority without giving sufficient direction. That is a question that sounds in delegation.

It is settled that the delegation process involved in the establishment of the Sentencing Commission under the broad principles articulated by Congress in the authorizing legislation was properly accomplished. The Court of Appeals in *Frank* has made that quite clear, and it seems to me as an independent matter that the principles announced by Congress in establishing the Sentencing Commission and putting it to work were at least as amply directive as the directions that Congress has given in many other important areas. They compare, if anything, favorably with the directives of Congress in the Rules Enabling Act, under which the Supreme Court has promulgated rules of civil procedure, Act of June 19, 1934, ch. 651, 48 Stat. 1064 (codified as amended at 28 U.S.C. § 2072) (cf., as to rules of criminal procedure, 18 U.S.C. § 3771).

Though it is often forgotten, the fact is that Congress has for a long time delegated substantive rule-making authority, which results in the formulation of norms of behavior enforceable by the processes of the criminal law, with virtually no directive guidance at all, in the Assimilative Crimes Act. 18 U.S.C. § 13. There, Congress has adopted as the governing criminal law in federal enclaves in the United States the criminal law adopted from time to time by the legislatures of the states in which those enclaves are located. As and when the legislature of Pennsylvania changes the criminal law of Pennsylvania, that is reflected in a shift in the criminal law governing federal enclaves here in this Commonwealth. That pattern is repeated throughout the United States. The Supreme Court of the United States, over dissent to be sure, has affirmed the constitutionality of that form of adoptive, or it would seem to me, delegative, law making by Congress through the agency of another body. *United States v. Sharpnack*, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958). In that instance, delegation is not even to a body that is part of the United States Government.

II. *Separation of Powers*

■ So, I have no trouble with the delegation involved in this case. Nor do I have any trouble with the assertion that the separation of powers has been infringed upon due to creation in the judicial branch of a body of seven, three of whose members are judges, and all of whom are removable for good cause by the President. Removal is only from the Sentencing Commission, not from judicial office. And I find it fanciful to suppose that any federal judge would feel that he or she would want to avoid executive displeasure by conforming to a particular executive position at the expense of his or her own conviction, simply to avoid the discomfort of being removed from the Sentencing Commission. Executive removal authority does not go to the judicial position; and that is, where the judge's integrity as an independent official is focused, as is fully explained in the *Federalist Papers*.

To the extent that we have any history of the operations of this Sentencing Commission, it is a history that refutes the defendant's concerns. The defendant supposes the possibility of judicial members of the

552

Commission fearful of losing their Commissionerships if they opposed the executive's position on some highly controversial issue. The facts are to the contrary, if we can take judicial notice (perhaps I should call it newspaper notice) that the Commission disagreed with positions urged by the then-Attorney General on behalf of the administration with respect to the death sentence. I have no recollection of anyone on the Commission being removed.

To the extent that there are or may be questions about whether the Sentencing Commission should properly be labeled a body within the judicial branch, I do not see these as issues of large consequence. In any event, I regard them as issues that do not go to the constitutional integrity of the Sentencing Commission and the Commission's product, the guidelines. It is conceivable that the effort of the Congress to designate the Commission as an agency in the judicial branch was to that extent erroneous and that, if a proper controversy presented the issue, a court would conclude that the Commission was more properly one to be characterized as belonging in the executive or legislative branch. Alternatively, it is conceivable under some context, that if the executive were to seek to remove a judge or a nonjudge member of the Sentencing Commission, the fact that the Commission was established by the Congress in the judicial branch would serve as a limitation on the executive's removal authority. Those issues I do not regard as before me or requiring resolution today, and I put them aside. I think they lie beyond the range of problems that this defendant has standing to invoke in her challenge to the guidelines.

In sum, I conclude that the Sentencing Commission was validly established, and that the guidelines are a valid product of the Commission. With that in mind, I must impose sentence within the framework of the guidelines because they govern my determination.